**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard L. HUNT, Defendant-Appellant.**

**No. 85–1624.**

United States Court of Appeals,
Fifth Circuit.

July 25, 1986.
Rehearing Denied Sept. 9, 1986.

Michael F. Pezzulli, Roark M. Reed, Dallas, Tex., for defendant-appellant.

Marvin Collins, U.S. Atty., Lynn Hastings, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEE and HIGGINBOTHAM, Circuit Judges, and HARVEY,* District Judge.

GEE, Circuit Judge:

Today, we consider a criminal defendant's challenges to various instructions given to the jury. On appeal, he argues that, taken together, the trial court's refusals to adopt his requested instructions amount to a denial of his right to a fair trial. Disagreeing, we affirm his convictions.

The facts of this case are undisputed. In 1983, Mary Tubbs, Susan Maddox, and appellant Richard Hunt formed two Texas companies, Creditsaver, Inc. and First Se-

* District Judge for the Eastern District of Michi- gan, sitting by designation.

curity Credit. With the stated corporate purpose of providing "mail order information service," they advertised in such publications as The National Enquirer and The Star Classified. Their advertisements provided the following:

> Assured credit: MasterCard, Visa, and more. All available through First Security Credit regardless of past credit, no credit, bankruptcy; completely guaranteed. Women and students cards available.

The ads included a toll-free number; a phone call would result in a solicitation letter and an application mailed to the hapless customer. The letter's solicitation read "Dear Future Cardholder" and was signed by "David Weston, New Accounts Department."[1] It encouraged the customer to fill out the application and return it along with a check for 35 dollars. The application itself requested information concerning employment and income, just as actual credit card applications would.

The complying customer would receive no credit card, however; rather, he would receive only a seven page booklet entitled "Ten Easy Steps to Good Credit." No advertisement or brochure had mentioned anything about such a booklet, and several customers later testified that the ads led them to expect the delivery of actual credit cards. Those calling the company to complain reached only an answering service. Their complaints, however, eventually reached the United States Postal Service, whose investigation eventually led to the seizure of the companies' business records and to criminal indictments.

Charged with several counts of mail fraud in violation of 18 U.S.C. § 1341, the three were tried and convicted of most counts. The trial court probated their sentences, conditioned on restitution to their victims and on public service work. Only Hunt now appeals, claiming that abuse of discretion occurred when the trial court refused to give certain requested instructions to the jury. More specifically, he argues that these refusals served to dimin-

ish or to eliminate the Government's burden of proving intent to defraud, a burden § 1341 imposes.

■ In considering his arguments, we must test the instructions given not against those he requested—for a criminal defendant lacks the right to have his requests adopted word for word—but against the law. *United States v. Kimmel*, 777 F.2d 290, 292–93 (5th Cir.1985), *cert. denied* — U.S. ——, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986). We continue to recognize the trial judge's "substantial latitude in tailoring his instructions as long as they fairly and adequately cover the issues presented in the case." *Id.* at 293, *quoting United States v. Pool*, 660 F.2d 547, 548 (5th Cir.1981). This view is reflected in the formula we propounded in *United States v. Grissom*, 645 F.2d 461 (5th Cir.1981). Under this formula, a trial judge's refusal to deliver a requested instruction constitutes reversible error only if three conditions exist:

(1) the instruction is substantively correct;

(2) it is not substantially covered in the charge actually given to the jury; and

(3) it concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present a given defense effectively.

*Id.* at 464. These cases make clear that we may reverse only if the defendant was improperly denied the chance to convey his case to the jury; in other words, an abuse of discretion occurs only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense. With this in mind, we turn to the issues of this case.

Hunt first argues that the trial court committed an abuse of discretion by refusing to give a good faith instruction to the jury. "Good faith is a complete defense to the charge of intent to defraud under the mail fraud statutes." *United States v. Goss*, 650 F.2d 1336, 1244 (5th

---

1. "David Weston" was a fictional identity for the defendants.

Cir.1981). Defendants elicited much testimony about their good faith intention to run a legal business, moreover. Although the court gave a detailed instruction on the prerequisite of specific intent, Hunt argues that a specific good faith instruction is also required. He correctly cites *United States v. Fowler*, 735 F.2d 823 (5th Cir.1984), and *Goss*, 650 F.2d 1336, as standing for the proposition that a defendant has the right to a good faith instruction if he introduced evidence of good faith. His reliance on these cases is unavailing, however, because later caselaw has effectively by-passed these decisions.

In *United States v. Gray*, 751 F.2d 733 (5th Cir.1985), a specific intention instruction similar to that of this case was given unaccompanied by a good faith instruction. We nevertheless affirmed the conviction, holding that "the sufficiency of the submission of a defendant's theory ... must be examined in the full context of trial including the final arguments of counsel." *Id.* at 735. Because the *Fowler* and *Goss* decisions lacked this examination, we questioned their continuing vitality; noting that the per se rule of *Goss* was inconsistent with the holdings of earlier cases such as *United States v. Wellendorf*, 574 F.2d 1289 (5th Cir.1978), we concluded that "any conflict among our prior decisions is resolved in favor of [*Wellendorf*]." 751 F.2d at 735–36. In his reply brief, Hunt attempts to distinguish cases such as *Gray* on the facts. For example, *Gray* differs because it involved the "facially illegal activity" of creating a fraudulent insurance company with non-existent corporate assets. No substance underlies this distinction, however, because *Gray*'s ruling is not couched in fact-specific terms.

More important, we recently applied *Gray*'s dictates in *Kimmel*, 777 F.2d 290, which also involved convictions for mail fraud. We there relied on *Gray* in concluding that the sufficiency of a good faith instruction must be judged by looking at more than just the words of the instruction:

> [W]e must now examine the totality of the circumstances at trial; detached scrutiny of an instruction's four corners no longer suffices to determine its propriety [citing *Gray* ]. In reality, a criminal defendant's good faith defense is the affirmative converse of the government's burden of proving his intent to commit a crime. Because this relationship exists, we must look at all opportunities Kimmel had to rebut the evidence suggesting his intent to defraud.... In *Gray* we saw no error in the trial judge's refusal to give a good faith instruction because, "[t]aken together, the trial, charge, and closing argument laid Gray's theory squarely before the jury. 751 F.2d at 736. The facts of this trial show that Kimmel had just as great a chance to make his case.

*Id.* at 293. It is therefore necessary to determine the extent to which Hunt was able to present his defense to the jury.

■ As mentioned before, Hunt himself refers to the defendants' great efforts to elicit testimony about their honest business practices and reputation for honesty. The defendants themselves testified as to the lack of any intent to deceive the public. They put on a number of character witnesses. In his closing argument, defense counsel mentioned good faith and focused on Hunt's concern with operating legitimately. Finally, the instruction on specific intent was both detailed and clear. Hunt obviously had great opportunity to "make his case," as much as Messrs. Gray and Kimmel. His argument is therefore meritless.

■ He continues by next alleging that the trial court improperly refused to instruct the jury that evidence of the defendants' good reputation for honesty may create a reasonable doubt. Before trial, defendant Maddox requested an instruction on reputation evidence.[2] At trial, Hunt

**2.** The following instruction was requested:
Where a Defendant has offered evidence of good general reputation for truth and veracity, or honesty and integrity, or as a law-abiding citizen, the jury should consider such evidence along with all the evidence in the case. Evidence of a Defendant's reputation inconsistent and (sic) veracity or honesty and integ-

presented three character witnesses each of whom testified about his reputation for honesty. The trial court nevertheless declined to give any instruction on reputation evidence. In deciding whether this was an abuse of discretion, we first note that, contrary to Hunt's contentions, trial judges need not follow the Pattern Jury Instructions promulgated by the United States Fifth Circuit District Judges Association. Although it is good practice to do so, and although their use would make our job much easier, we have never mandated unswerving obedience to these recommended forms of instruction. *See, e.g., Kimmel,* 777 F.2d at 295. Divergence from the Pattern Jury Instructions therefore cannot stand alone as cause for reversal.

Hunt, however, also asserts that *Darland v. United States,* 626 F.2d 1235 (5th Cir.1980) requires a jury instruction on reputation evidence. *Darland* is somewhat beside the point, however, because the trial court there not only failed to give such an instruction but also refused to allow the introduction of such evidence at all. In other words, Darland was denied any chance to tell the jury of his reputation. We fully recognize that the law gives a defendant the right to present reputation evidence in such a case as this; indeed, we reaffirm the recognition that proof of good character can raise a reasonable doubt of specific intent. *See Edginton v. United States,* 164 U.S. 361, 366–67, 17 S.Ct. 72, 73–74, 41 L.Ed. 467 (1896). Defendants here, however, had the opportunity to introduce such evidence and thereby lay the seeds of reasonable doubt within the jurors' minds. Because *Darland* differs significantly from this case, its holding is inapposite.

Leaving that case behind, we return to the basic question of whether an instruction that identifies reputation evidence as the possible basis of reasonable doubt is required. True, Judge Wisdom has stated that, "[i]n some circumstances, evidence of good character may of itself create a reasonable doubt as to guilt, and the jury must be appropriately instructed." *United States v. Hewitt,* 634 F.2d 277, 278 (5th Cir.1981), *citing United States v. Callahan,* 588 F.2d 1078, 1083–86 (5th Cir.), *cert. denied* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). The circumstances are never specified, however, and *Callahan* does not really consider when this instruction is required.

■ More helpful guidance comes from *United States v. Lamp,* 779 F.2d 1088 (5th Cir.1986). In deciding that the trial court's failure to give a reputation evidence instruction was no abuse of discretion, we there followed the formula of *Grissom,* 645 F.2d 461. Again following *Grissom*'s dictates, we fail to discern an abuse here. Unquestionably, Hunt's requested instruction was legally correct yet was not substantially covered in the jury charge. The court's failure to include it, however, cannot be said to have seriously impaired Hunt's ability to present his defense. We have already noted the great latitude given the defendants in presenting their theories and evidence. This being so, it is difficult to see how the refusal to give this requested instruction suddenly transmogrified this trial into an unfair proceeding. Because the third condition of the *Grissom* formula does not exist here, we find no reason to intrude upon the province of the trial judge.

■ Hunt next argues that an abuse of discretion occurred when the court, in charging the jury on the requirement of specific intent, failed to define "willfully" as meaning "with bad purpose." The trial

---

rity, or as a law-abiding citizen, has not been discussed; or that those traits of the Defendant's character have not been questioned, may be sufficient to warrant an inference of good reputation as to those traits of character. Evidence of a Defendant's reputation inconsistent with those traits of character ordinarily involved in the commission of the crime

charged may give rise to a reasonable doubt, since the jury may think it improbable that a person of good character in respect to those traits would commit such a crime.
The jury will always bear in mind that the law never imposes upon a Defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

court refused defendants' request to follow the Pattern Jury Instruction,[3] instead enouncing the following:

> The term "willfully" means that the act was committed voluntarily and purposely, with the specific intent to disobey or disregard the law.
>
> \* \* \* \* \* \*
>
> The term "intent to defraud" means to act with the specific intent to deceive or cheat, ordinarily for the purpose of obtaining some financial gain or causing some financial loss to another. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent, the Government must prove that the defendant in question knowingly did an act which the law forbids, purposely intending to violate the law....

Given the thoroughness of these instructions, it is ludicrous for Hunt to contend that the failure to follow the Pattern Jury Instructions may have led the jury to find him guilty based on general intent alone. The trial judge explicitly and specifically told the jury that guilt must be based on more than general intent alone. Hunt argues nevertheless that a fair trial can occur only if the judge utters the magic words "with bad purpose." For us to require certain ways of defining terms crucial to the jury's proper deliberations without our reviewing the entire charge, without our inquiring into all circumstances of the trial, would promote shallow form over substance. We emphatically refuse to straitjacket the district courts' discretion in instructing juries because a criminal defendant raises some abstract semantical debate. The reality of this case shows that the above-detailed instruction was both accurate and thorough; that conclusively resolves the issue.

■ Hunt finally challenges the trial court's refusal to give a requested instruction, again based on the Pattern Jury Instructions, on reasonable doubt.[4] The court eventually instructed the jury as follows:

> The government has the burden of proving each Defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a Defendant's guilt. There are few things in life that we know with absolute certainty, and in criminal cases the law does not require proof that a Defendant is guilty beyond all possible doubt. If, based upon your consideration of all of the evidence, you are firmly convinced that a Defendant is guilty of the crime charged, you must find that Defendant guilty. If, however, you think there is a real possibility that a Defendant is not guilty, you must give that Defendant the benefit of the doubt and find him or her not guilty.

Apparently dissatisfied with a definition of proof beyond a reasonable doubt as proof that leaves the jury "firmly convinced of a defendant's guilt," Hunt argues that the given instruction provides no meaningful delineation of the concept. As the Government points out, however, "firmly convinced" seems little different from "a real doubt," a definition which we have earlier approved. *See United States v. Alonzo*, 681 F.2d 997 (5th Cir.1981); *cert. denied* 459 U.S. 1021, 103 S.Ct. 386, 74 L.Ed.2d 517 (1982); *United States v. Schaffer*, 600 F.2d

---

**3.** The Pattern Jury Instructions define "willfully" as follows:

> The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

U.S. Fifth Circuit District Judges Association, Pattern Jury Instructions: Criminal Cases, p. 21 (1983).

**4.** Hunt requested the following:

> It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs.

1120 (5th Cir.1979). As mentioned before, Hunt's efforts to base error on abstract semantics must fail if the trial court expounded the law accurately and conscientiously. Because this was the case here, we find this argument as meritless as Hunt's previous challenges.

■ Hunt makes a second attack on the reasonable doubt instruction, however, arguing that the court's words shifted the burden of proof to him. The trial court told the jury that if it perceived "a real possibility that a Defendant is not guilty, you must give that Defendant the benefit of the doubt...." Hunt now interprets this as requiring the defendants to prove a real possibility of their innocence before the jury may properly extend to them the benefit of any doubt. This interpretation is ridiculous for two reasons. First, nowhere did the court impose the duty on the defendants to show their innocence. The words used fail to refer to the source of any "real possibility" of innocence; they only discuss the consequences should, for any reason, that real possibility exist. Second, the court also charged the jury about the presumption of innocence: "each defendant is presumed to be innocent. A Defendant is not required to prove his or her innocence or to offer any evidence...." Instead, as the court instructed, "[t]he Government has the burden of proving each Defendant guilty beyond a reasonable doubt." Given these instructions, Hunt's final challenge to the jury charge is also meritless, if not frivolous.

■ As is customary in criminal appeals, Hunt argues that the evidence is insufficient to support a guilty verdict. As usual, this argument is unworthy of much discussion; we only note that the record contains enough circumstantial evidence of his intent to defraud to allow conviction by a reasonable jury. Although no grounds for reversal exist, we take this opportunity to encourage the district courts to follow the Pattern Jury Instructions promulgated by the United States Fifth Circuit District Judges Association. Having already acknowledged the wide leeway trial courts possess in charging juries, the many variances existing among the courts' instructions only provide more ammunition for those appealing their convictions. A measure of uniformity would certainly render appellate review easier and quicker. Having said this, we reiterate that no abuse of discretion occurred here; Hunt's convictions are therefore AFFIRMED.