**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jean Marie ST. GELAIS,
Defendant–Appellant.**

No. 90–2726.

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1992.

Marvin D. Miller, Alexandria, Va., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Ronald G. Woods, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, DAVIS, and WIENER, Circuit Judges.

THORNBERRY, Circuit Judge:

The defendant, Jean Marie St. Gelais, was indicted and convicted on six counts of aiding and abetting wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2. The district court sentenced St. Gelais to serve six consecutive four year prison terms, and to pay a fine of $1,000,000 and restitution of $12,120,244.29. St. Gelais appeals the validity of his conviction and the fine and restitution imposed.

## Background

The six fraudulent wire transfers for which St. Gelais was convicted were part of a very involved and complicated scheme. In summary, St. Gelais sent fraudulent and misleading documents to an insurance company to induce the insurance company to issue surety bonds on promissory notes. St. Gelais then used the surety bonds to secure large loans from two financial institutions.

In order to carry out his scheme, St. Gelais created various limited partnerships allegedly for the purpose of oil and gas exploration and drilling. The investors for the limited partnerships were his son, his girlfriend, other individuals, and companies owned or operated by him that were worth little or nothing. Each investor supposedly contributed $37,000 cash to the partnership and signed a promissory note to pay an additional $187,000. The government introduced evidence at trial to show that St. Gelais fraudulently induced some investors to sign promissory notes and simply forged signatures on others.

The next step in the scheme was to get the promissory notes bonded by a reputable company so that St. Gelais, through the limited partnerships, could borrow against the notes. St. Gelais sent private placement memoranda describing the purpose of the limited partnerships to Mutual Fire, Marine and Inland Insurance ("Mutual") so that Mutual could determine whether the limited partnership met its criteria for bonding. He also sent an "investor package" for each investor or limited partner which contained the individual investor's financial statement, a signed pledge agreement, and two copies of the promissory note. Mutual relied on these documents to certify the financial condition of the limited partners, and hence, in bonding the promissory notes.

Once Mutual issued surety bonds on the promissory notes, St. Gelais, on behalf of the limited partnerships, approached the financial institutions for loans. He procured loans for the limited partnerships' alleged purpose, gas and oil exploration and drilling, from Metropolitan Savings Bank, now Crossland Savings Bank, ("Metropolitan"), and Anchor Savings Bank ("Anchor"), using the promissory notes as security. The financial institutions wired over $13 million to St. Gelais during the summer of 1984. Of course, the various limited partners defaulted on the promissory notes and the loan payments were not paid to Metropolitan and Anchor. Mutual, having bonded the notes, partially paid the loss to the financial institutions, but eventually stopped paying due to its own insolvency.

St. Gelais was indicted on six counts of aiding and abetting wire fraud and was convicted on all six counts. On appeal he claims (1) that the district court erred by not including a specific good faith instruction in the jury charge; (2) that the district court erred by instructing the jury that it could convict St. Gelais on the basis of a scheme substantially similar to the scheme contained in the indictment; (3) that the district court erred by not instructing the

jury that only Mutual could have been an intended victim of the scheme and that, as a result of the failure to give that instruction, the jury's verdict is flawed; (4) that the district court imposed the fine under 18 U.S.C. § 3623 in violation of the ex post facto clause;[1] and (5) that the district court erred by not articulating factual findings regarding the fine imposed or the restitution ordered, pursuant to 18 U.S.C. § 3572 and § 3664, respectively. We find that the $1,000,000 fine was imposed in violation of the ex post facto clause and remand for sentencing on that basis only. We affirm the district court's opinion in all other respects.

## Analysis

### A. *The Good Faith Instruction*

St. Gelais claims that the district court erroneously ruled that the defense of good faith was not supported by the evidence and committed reversible error by refusing to include a good faith instruction in the jury charge. Although we need not reach the issue of whether the evidence supported the defense of good faith, we find that the district court did not commit reversible error by refusing to include the good faith instruction.

█ "A district court's refusal to include a defendant's proposed jury instruction in the charge is reviewed under an abuse of discretion standard." *United States v. Rochester*, 898 F.2d 971, 978 (5th Cir.1990). The district court abuses its discretion only if three conditions exist: (1) the requested instruction is substantively correct; (2) the requested instruction is not substantially covered in the charge given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to effectively present a particular defense. *United States v. Hunt*, 794 F.2d 1095, 1097 (5th

Cir.1986). Under this test, "[t]his Court will not find an abuse of discretion where the instructions fairly and adequately cover the issues presented by the case." *Rochester*, 898 F.2d at 978.

█ St. Gelais cites *United States v. Goss* as authority for his contention that "if there is any evidentiary support whatsoever for a legal defense, and the trial court's attention is specifically directed to that defense, the trial judge commits reversible error by refusing to charge the jury." *United States v. Goss*, 650 F.2d 1336, 1344 (5th Cir.1981). St. Gelais fails to recognize, however, that *Goss* "must be read in light of later cases which indicate that the failure to instruct on good faith is not fatal when the jury is given a detailed instruction on specific intent and the defendant had the opportunity to argue good faith to the jury." *Rochester*, 898 F.2d at 978 (citing *United States v. Hunt*, 794 F.2d 1095 (5th Cir.1986)). Regardless of whether the evidence supported the defense of good faith, the court's definition of specific intent required the jury to consider any good faith St. Gelais may have demonstrated before finding him guilty of wire fraud.

The jury charge stated that

What must be proved beyond a reasonable doubt is that the Defendant knowingly and willfully devised or intended to devise or join a scheme to defraud substantially the same as the one alleged in the indictment....

The word "knowingly" as that term has been used from time to time in these instructions means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully" as that term has been used from time to time in these instructions means that the act was committed voluntarily and purposely with the specific intent to do something the law

---

1. In St. Gelais' original brief he argued, as an additional point of error, that the district court ordered that he pay the restitution as a precondition of parole. The government responded, stating that the payment of restitution was not a pre-condition of parole but rather a condition to be met during the course of parole. St. Gelais agreed in his reply brief that if the government's interpretation was correct, the district court had not erred by imposing restitution as a condition of parole. Since the district court clearly adopted the probation department's recommendation that payment of the restitution be a requirement of parole as allowed by 18 U.S.C. § 3579(g), not a pre-condition of parole, this issue is no longer contested.

forbids, that is to say, with bad purpose either to disobey or disregard the law. (R., Vol. 20 at 18–19).

The court's instruction on specific intent required a showing of "bad purpose" for conviction. In this case, just as in the *Rochester* case, "the jury could only find specific intent after taking the evidence regarding good faith into account." *Rochester*, 898 F.2d at 979. Thus, the concept of good faith was adequately conveyed to the jury and the district court's refusal to include a specific instruction is not reversible error. *See United States v. Luffred*, 911 F.2d 1011, 1016 (5th Cir.1990) ("When the court instructs the jury as to the government's burden of proving that the defendant's conduct was willful and then properly defines that term, it adequately conveys the concept of the good faith defense.").

Although the court's charge, taken as a whole, is sufficient to support our finding that the district court did not commit reversible error by refusing to include a specific good faith instruction, we also point out that, despite St. Gelais' assertion that the defense of good faith was not argued to the jury, the trial transcript reveals numerous statements in defense counsel's closing arguments that implicitly raised the defense of good faith. For example, St. Gelais' counsel stated that the prosecution had discovered over the course of the investigation that "there is no motive for Mr. St. Gelais to involve himself in an inappropriate financial or business deal." (R., Vol. 28 at 22). Counsel also argued that Mr. St. Gelais' disclosures regarding the purchase of a penthouse allegedly with the loan funds were "consistent with, not inconsistent with, open and honest dealing." (R., Vol. 28 at 34). Finally, defense counsel argued throughout his closing argument that business practices were very different in 1984 compared to business practices in 1990. When discussing the false representation that each investor had put cash into the limited partnerships, defense counsel argued that

> In each and every one of these pledge agreements, there's a representation that

an investor has, in fact, put money down in these programs. When you look back through the crystal clear eyes of 1990 at the way business was run in 1984, when you take the position the government does, ... you overlook the way business was run back then.

> As I said, money flowed like oil. The surety didn't care about the down payment, nor did the lending agencies like Anchor Savings or Metropolitan.

(R., Vol. 28 at 26). This statement and others like it imply that St. Gelais acted in good faith because he did not do anything that was unacceptable by 1984 standards. Furthermore, defense counsel implied that St. Gelais acted in good faith and was simply a victim of the economy when he stated that there was "[n]o way on earth, no way on earth to make money on these programs" and that "you couldn't have gone into a drilling program at a worst [sic] time." (R., Vol. 28 at 54.)

We find that the court's charge adequately conveyed the concept of good faith to the jury and that, while defense counsel did not mention the words "good faith" in his closing argument, his remarks put the concept of good faith and innocent motive before the jury. Thus, the district court did not commit reversible error by refusing to include a specific good faith instruction in the jury charge.

B. *The Instruction Regarding the Scheme*

 ■ St. Gelais also contends that his conviction should be reversed because the district court's charge constructively amended the indictment and let the jury convict him on the basis of conduct outside the scope of the indictment. This argument is completely without merit.

In his brief, St. Gelais alleges that the court's charge allowed the jury to find a scheme larger than or different from the one charged in the indictment. This claim is defeated by this court's holding in *United States v. Soudan*, 812 F.2d 920 (5th Cir.1986) *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). In *Soudan*, the district court instructed the jury

that "what must be proved is that the accused knowingly and willfully devised or intended to devise a scheme to defraud substantially the same as the one alleged in the indictment." *Soudan*, 812 F.2d at 929. This court held that the court's charge allowed the jury a "basis upon which to find the defendant criminally culpable within the scope of the indictment," and that no constructive amendment or prejudicial variance was evident. *Soudan*, 812 F.2d at 929.

In this case, the instruction St. Gelais complains of is the same instruction the district court gave in *Soudan:* "what must be proved beyond a reasonable doubt is that the Defendant knowingly and willfully devised ... a scheme to defraud substantially the same as the one alleged in the indictment." (R., Vol. 20 at 18–19). The district court in this case also admonished the jury that the "Defendant is not on trial for any act or conduct or offense not alleged in the indictment." (R., Vol. 20 at 15). This court ruled in *Soudan* that this same instruction "guaranteed [that] the jury did not return a guilty verdict on a theory which broadened the scheme outlined in the indictment." *Soudan*, 812 F.2d at 929. Thus, St. Gelais has not demonstrated any flaw in the verdict.

## C. *The Victims of the Scheme*

St. Gelais' argument supporting this point of error is difficult to decipher, but he appears to allege that the evidence did not support a finding that he intended to defraud Metropolitan or Anchor and that the district court erred by not instructing the jury that only Mutual could have been an intended victim of the scheme. He goes on to argue that, because the court did not instruct the jury that only Mutual could have been a victim of the scheme to defraud, the jury rendered a flawed verdict. He alleges that the verdict is flawed in two respects: (1) the verdict might not have been unanimous because the jury was not required to agree on Mutual as the only intended victim, and (2) the jury might have convicted him on the basis of noncriminal conduct since, if Mutual was the only intended victim, any misrepresentations he

made to Metropolitan or Anchor did not violate the wire fraud statute. These two arguments rely on a finding that only the court erred by not instructing the jury that Mutual could have been a victim of the scheme.

St. Gelais raises this objection to the jury charge for the first time on appeal. "Where a defendant fails to object to a jury instruction at trial and raises the issue first on appeal, an appellate court will uphold even an inaccurate jury instruction provided no 'plain error' has resulted from the inaccuracy." *United States v. Birdsell*, 775 F.2d 645 (5th Cir.1985) *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1979, 90 L.Ed.2d 662 (1986) (citing *United States v. Reeves*, 752 F.2d 995, 1000 (5th Cir.) *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985)). We find that the instruction was accurate and that no plain error resulted.

■ "A wire fraud offense under § 1343 requires proof of (1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme." *United States v. Shively*, 927 F.2d 804, 813 (5th Cir.) *cert. denied sub nom.*, *Johnson v. United States*, — U.S. ——, 111 S.Ct. 2806, 115 L.Ed.2d 979 (1991). Not only must a defendant intend to defraud or deceive, but he must intend for some harm to result from the deceit. *United States v. Starr*, 816 F.2d 94, 98 (5th Cir.1987) ("Only a showing of intended harm will satisfy the element of fraudulent intent."). St. Gelais argues that he did not intend to deprive Metropolitan or Anchor of property since Mutual was ultimately responsible for paying the loans. As support for this argument, he relies on *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) in which the Supreme Court held that deceitful conduct that does not contemplate harm to property rights is outside the scope of the mail and wire fraud statutes. He asserts that Mutual's responsibility to pay the loans precludes a finding that he intended to harm Metropolitan and Anchor's property rights, as required by *McNally* for a wire fraud conviction.

■ This court addressed the scope of *McNally* in *United States v. Judd*, 889 F.2d 1410 (5th Cir.) *cert. denied sub nom., Poodry v. United States*, 494 U.S. 1036, 110 S.Ct. 1494, 108 L.Ed.2d 629 (1990). The defendants in *Judd* claimed that the court erred in instructing the jury that "intent to defraud could be found if the defendants acted 'knowingly with the specific intent to deceive ordinarily for the purpose of causing some financial loss to another *or bringing about some financial gain to oneself.*' " *Judd*, 889 F.2d at 1414. Specifically, the *Judd* defendants claimed that the inclusion of the phrase "or bringing about financial gain to oneself" violated the Supreme Court's holding in *McNally* that § 1343 applied only to the deprivation of a victim's property rights. *Judd*, 889 F.2d at 1414. This court held that the instruction was correct, writing that

> *McNally* is read much too broadly when it is claimed to require that mail and wire fraud convictions can be sustained only if motivated by intent to cause financial loss to another. The Supreme Court in *McNally* held only that the intangible right to good government is not covered by the mail and wire fraud statutes.

*Judd*, 889 F.2d at 1414. The district court in the case at bar gave the same instruction as the district court in *Judd:* "To act with intent to defraud means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self." (R., Vol. 20 at 17). St. Gelais intended to deceive Metropolitan and Anchor in order to bring about his own financial gain. Pursuant to this court's decision in *Judd*, intent to defraud another for your own financial gain constitutes the specific intent to defraud as required by the wire fraud statute. Thus,

St. Gelais' contention that he intended only to defraud Mutual fails. Accordingly, St. Gelais' contention that the verdict was flawed because (1) the jury based the conviction on noncriminal conduct and (2) might not have unanimously agreed that Mutual was the only victim, must also fail.[2]

### D. *The Violation of the Ex Post Facto Clause*

St. Gelais claims that the district court imposed a one million dollar fine in violation of the *ex post facto* clause of the United States Constitution. We hold that the fine was imposed in violation of the *ex post facto* clause and remand for resentencing on the issue of the fine.

The district court imposed a $1 million fine under the Criminal Fine Enforcement Act of 1984, which was codified at that time under 18 U.S.C. § 3623. Section 3623 provided that "[a]n individual convicted of an offense may be fined ... in the case of a felony, $250,000" for any offense committed between January 1, 1985 and November 1, 1987. For wire fraud offenses committed before January 1, 1985, the applicable fine of $1,000 per count was provided by the wire fraud statute. *See* 18 U.S.C. § 1343. Thus, if St. Gelais committed the wire fraud after January 1, 1985, his maximum fine would be $1,500,000 ($250,000 for each of six counts); while, if he committed the wire fraud prior to January 1, 1985, the maximum fine allowed by § 1343 would be $6,000 ($1,000 for each of six counts).

■ All six wire transfers for which St. Gelais was convicted occurred in 1984. The government contends that although the actual transfers occurred in 1984, St. Gelais' scheme to defraud continued into 1985 and should be treated as a continuing offense. We disagree. Each wire transmission in furtherance of a scheme to de-

---

**2.** Even if St. Gelais alleged, regardless of whether Mutual was the only intended victim, that the verdict was flawed because the charge did not separately instruct the jury to unanimously agree on the victims, his argument would fail. He does not cite a single case to support his assertion that, in addition to instructing the jury that its verdict must be unanimous, the court must separately instruct the jury to unanimously agree on the intended victim. The cases St.

Gelais relies on stand only for the well established proposition that, in order to demonstrate the requisite intent to defraud, the defendant must have intended some harm to a victim. These cases discuss the need for an intended victim only in relation to the specific intent requirement and do not, by any means, hold that the court must separately instruct the jury to unanimously agree on each intended victim of the scheme.

fraud constitutes a separate crime. *See United States v. Blankenship,* 746 F.2d 233, 236 (5th Cir.1984) (each separate use of the mail in furtherance of a scheme to defraud constitutes a separate crime). It is not the scheme to defraud but the use of the mails or wires that constitutes mail or wire fraud. *See United States v. Ashdown,* 509 F.2d 793, 798 (5th Cir.) *cert. denied,* 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975). Hence, St. Gelais committed the offenses for which he was convicted in 1984.

The district court imposed a fine in violation of the *ex post facto* clause because it imposed the maximum fine applicable to offenses committed after January 1, 1985 rather than the maximum fine allowed by § 1343 for offenses committed prior to January 1, 1985. *See United States v. Suarez,* 911 F.2d 1016, 1021 (5th Cir.1990) (an increase in sentence based on an amendment to the sentencing guidelines effective after the offense was committed violates the *ex post facto* clause). We remand the case for imposition of a fine in accordance with this opinion.

E. *The Restitution*

▪ St. Gelais alleges that the district court erred by not specifically articulating its findings regarding the mandatory factors it considered when imposing restitution.[3] We review the district court's award of restitution for an abuse of discretion. *United States v. Ryan,* 874 F.2d 1052 (5th Cir.1989). We find that the district court neither abused its discretion in choosing not to articulate its findings nor in determining the amount of restitution.

▪ In determining the amount of restitution the district court

shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664. St. Gelais contends that the district court's failure to articulate its findings resulting from consideration of each of these factors mandates a remand. The Fifth Circuit, however, does not require specific findings regarding the restitution factors in every instance:

"The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry—absent an assignment of reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution. If the record is insufficient, reasons must be assigned."

*Ryan,* 874 F.2d at 1053. Thus, we examine the record in this case and find that it provides an adequate basis for the district court's decision to order full restitution.

▪ The district court adopted the finding in the presentence report that the amount of the victims' loss was $12,120,-244.29. St. Gelais objected to the amount of loss alleged in the presentence report, claiming that the most the victims could have lost was $3.5 million. The government argued that the total amount of loss was $13,215,024. The government carries the burden of proving the amount of victims' loss under 18 U.S.C. § 3664, and the district court resolves any dispute as to the proper amount of restitution by a preponderance of the evidence. 18 U.S.C. § 3664(d). The district court did not abuse its discretion in adopting the presentence report's finding that the total loss amounted to $12,120,244.29.

In addition to considering the amount of the victims' loss, the district court must consider the financial resources of the defendant, and the financial needs and earning ability of the defendant. The district court clearly attempted to consider these factors, but St. Gelais refused to provide the court with his personal financial state-

---

**3.** St. Gelais also raises this point of error with regard to the fine. Since we find that the case must be remanded for the imposition of a fine in accordance with § 1343, we need not address whether the district court erred in failing to articulate specific findings regarding the fine.

ment. When the court questioned St. Gelais' attorney about this fact at sentencing, his attorney stated that St. Gelais would soon be examined by creditors in a bankruptcy proceeding and that he would provide that information to the court when it was available. (R., Vol. 29 at 16). The court had no choice but to impose full restitution because by statute, the burden of demonstrating the financial resources of the defendant rests with the defendant. *See* 18 U.S.C. § 3664. The district court did state that if necessary, it could "amend the sentence insofar as it deals with restitution if in fact [St. Gelais] does submit to such an under-oath interrogation." (R., Vol. 29 at 17). The district court did not abuse its discretion in finding that the amount of loss amounted to $12,120,244.29 and in imposing restitution in full. The district court did not abuse its discretion in choosing not to articulate all of its findings because the record provides an adequate basis for the court's decision to impose full restitution.

Conclusion

Because St. Gelais committed all six wire fraud offenses prior to January 1, 1985, we remand this case only for the assessment of a fine pursuant to § 1343.

AFFIRMED AND REMANDED.