**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 99-10768
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SHELBY LEE DANIELS,

Defendant - Appellant.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

April 9, 2001

Before POLITZ and EMILIO M. GARZA, Circuit Judges, and HEAD[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Shelby Lee Daniels appeals his conviction for bankruptcy fraud under 18 U.S.C. § 157. Daniels challenges (1) the constitutionality of the bankruptcy fraud statute; (2) the sufficiency of the evidence to support his conviction; (3) the district court's denial of Daniels' request for an instruction on good faith in the jury charge; and (4) the district court's denial of Daniels' request for an instruction regarding specific intent. We affirm.

_____

[*]      District Judge of the Southern District of Texas, sitting by designation.

Daniels' conviction arises out of a scheme developed by himself and his co-defendant Tronnald Dunaway, ostensibly to aid Dallas-area residents in avoiding foreclosure on their homes. Daniels and Dunaway obtained the names of residents who were about to have their houses foreclosed on, and offered their services in stopping the foreclosure. Daniels promised that the residents would not have to file for bankruptcy, hence preserving their credit. For his "services," Daniels demanded $500 down and a $500 monthly fee for as long as it took to stop the foreclosure.

To effectuate his plan, Daniels had the homeowners convey a percentage of the interest in their homes to one of several companies Daniels and Dunaway had formed. The company would then file for bankruptcy, listing the interest in the home as one of its assets. Upon the filing of the bankruptcy petition, the foreclosure on the house would be automatically stayed. To avoid the scrutiny of bankruptcy officials, Daniels would use various techniques to "flip" the interest in the house from one company to the next, with each new company filing for bankruptcy and invoking the automatic stay.

Daniels received a total of $24,000 in payments from the north Texas residents. In addition, Daniels and Dunaway managed to live rent-free in the residents' homes after convincing the residents that they had to leave. Dunaway pleaded guilty to both bankruptcy fraud and conspiracy to commit bankruptcy fraud. A jury convicted Daniels of fourteen counts of bankruptcy fraud.

Daniels asserts that the bankruptcy fraud statute, 18 U.S.C. § 157,[1] is unconstitutionally vague

---

[1]    18 U.S.C. § 157 provides that: "A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—(1) files a petition under title 11; (2) files a document in a proceeding under title 11; or (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, shall be fined under this title, imprisoned not more than 5 years, or both."

as applied to him because it did not provide notice that his scheme was illegal. "[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). As Daniels' is not a First Amendment challenge, we apply this standard in the context of the specific facts of Daniels' case. *See United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999). Daniels claims that the vagueness in the bankruptcy fraud statute is that it is unclear who is supposed to be protected from the fraudulent conduct—the bankruptcy system itself, a member of the general public, or some creditor. Daniels insists that he believed his conduct was not covered by the statute, and that he was forthcoming about his "business plan" with all of the homeowners involved.

Daniels' is the first constitutional challenge to the bankruptcy fraud statute brought before this court. We note, however, that the legislative history of the statute confirms that it was modeled after the mail fraud statute, which we have previously sustained against a void-for-vagueness challenge. *See* 140 Cong. Rec. H10752-01, at \*H10773 (daily ed. Oct. 4, 1994) (statement of Rep. Brooks); *see also United States v. Feinberg*, 535 F.2d 1004, 1010 (5th Cir. 1976) (holding that the mail fraud statute, 18 U.S.C. § 1341, is not unconstitutionally vague). The mail fraud statute contains identical language—criminalizing conduct that "devise[s] or intend[s] to devise a scheme or artifice to defraud"—leading us to the conclusion that there is nothing inherently vague in the notion of a general anti-fraud provision. The argument proclaiming Daniels' confusion as to who he might be prohibited from defrauding is fatuous. As is clear from the facts of this case, Daniels defrauded not

only the homeowners, but also the bankruptcy system and the mortgage companies. The bankruptcy fraud statute, as applied to Daniels, is constitutional.

Daniels next contends that there is insufficient evidence in his case to support a finding of bankruptcy fraud. We review sufficiency of the evidence claims in the light most favorable to the verdict, and affirm the conviction if a reasonable trier of fact "could have found that the evidence established the essential elements of the crime beyond a reasonable doubt." *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). Daniels maintains that there is no evidence to support a finding that he intended to defraud the homeowners; instead he was following an above-board business plan. Daniels' contention again defies the ample evidence contained in the record. Trial testimony established that Daniels falsely promised to obtain refinancing on several of the homeowners' houses, misidentified himself to one of the homeowners in an effort to conceal his involvement, falsely informed one homeowner that her home had not already been foreclosed on, and falsely listed one homeowner as "landlord" of the newly-created "lease" to the house of another homeowner. Daniels formed shell companies for the sole purpose of filing bankruptcy, facilitated invalid partial conveyances, and filed bankruptcy petitions containing false information. The evidence is sufficient to support Daniels' conviction. *Cf. United States v. Franklin*, 210 F.3d 386 (9th Cir. 2000) (unpublished) (finding harmless error in the district court's failure to instruct the jury on fraudulent intent because of the extent of evidence from which the jury could have inferred intent in a scheme very similar to Daniels').

Daniels also alleges error in the district court's refusal to issue a good faith instruction to the jury. "A district court's refusal to include a defendant's proposed jury instruction in the charge is reviewed under an abuse of discretion standard, and the trial judge is afforded substantial latitude in

-4-

formulating his instructions." *United States v. Rochester*, 898 F.2d 971, 978 (5th Cir. 1990). Where the instructions that are given "fairly and adequately" address the issues in the case, we do not find an abuse of discretion. *Id.* Here, the district court defined the terms "knowingly"[2] and "specific intent."[3] A district court does not abuse its discretion—it fairly and adequately addresses the issues in the case—when it defines such terms in a manner that permits the jury to consider the presence or absence of good faith. *See United States v. St. Gelais*, 952 F.2d 90, 93 (5th Cir. 1992). Further, Daniels had the opportunity to argue good faith to the jury, and the court gave an adequate "specific intent" instruction. *See id.* We find no abuse of discretion in the district court's refusal to issue the instruction.

Finally, Daniels contends that the district court erred in failing to issue his proposed instruction on "specific intent." We again review for abuse of discretion, and find none. *See St. Gelais*, 952 F.2d at 93. We see no discernable difference between Daniels' proposed instruction and the instruction issued by the court that an act with intent to defraud meant "with the specific intent to deceive or cheat, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self."

Daniels' conviction and sentence for bankruptcy fraud are AFFIRMED.

---

[2] "Knowingly: 'Knowingly' means that the act was done voluntarily and intentionally and not because of mistake or accident."

[3] "Specific Intent: The offenses charged in this case require proof of specific intent on the part of the defendant before the defendant can be convicted. Specific intent, as the term implies, means more than general intent to commit the act. To establish specific intent, the government must prove that the defendant knowingly did an act which the law forbids, or knowingly failed to do an act which the law requires, purposely intending to violate the law. . . ."