United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 25, 2007**

Charles R. Fulbruge III
Clerk

I n the
# United States Court of Appeals
## for the F ifth Circuit

---

m 05-20908

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

PAUL ARTHUR FRAME, JR.,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas
m 4:04-CR-491-ALL

---

Before GARWOOD, SMITH, and DEMOSS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Paul Frame appeals his conviction. Finding no abuse of discretion, we affirm.

I.

Frame was the President and CEO of Seitel, Inc. ("Seitel"), a large public corporation. He was convicted by a jury of mail fraud, wire fraud, money laundering, and making a false statement in violation of 18 U.S.C. § 1001. The convictions stem from Frame's orchestration of the payment of his personal legal bills from Seitel's funds and deceptive statements

he made (and disclosures he failed to make) about the scheme. Frame challenges the district court's refusal to include jury instructions on good faith and reliance on the advice of counsel and its refusal to ask seven voir dire questions about the prospective jurors' opinions about the infamous Enron case.

## II.

"A district court's refusal to include a defendant's proposed jury instruction in the charge is reviewed under an abuse of discretion standard, and the trial judge is afforded substantial latitude in formulating his instructions." *United States v. Daniels*, 247 F.3d 598, 601 (5th Cir. 2001) (quoting *United States v. Rochester*, 898 F.2d 971, 978 (5th Cir. 1990)). The court abuses its discretion only if "(1) the requested instruction is substantively correct; (2) the requested instruction is not substantially covered in the charge given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to effectively present a particular defense." *United States v. St. Gelais*, 952 F.2d 90, 93 (5th Cir. 1992) (citing *United States v. Hunt*, 794 F.2d 1095, 1097 (5th Cir. 1986)).

If the given instructions "fairly and adequately" address the issues, there is no abuse of discretion. *Daniels*, 247 F.3d at 601. A rejection of a defendant's request for an instruction on reliance on the advice of counsel is not an abuse of discretion if there is insufficient evidence that the defendant consulted with attorneys. *United States v. Tannehill*, 49 F.3d 1049, 1057-58 (5th Cir. 1995).

The court issued a specific intent instruction and instructions defining "knowingly" and

"willfully"[1] but did not include Frame's requested instructions on good faith[2] and reli

---

[1] The three instructions were as follows:

The offenses charged in this case require proof of specific intent on the part of the defendant before the defendant can be convicted. Specific intent, as that term implies, means more than general intent to commit the act. To establish specific intent, the government must prove that the defendant knowingly did an act which the law forbids or knowingly failed to do an act which the law requires, purposely intending to violate the law.

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

[2] Frame's proposed good faith instruction was as follows:

The good faith of a defendant is a complete defense to the charges in this case because good faith on the part of the defendant is, simply, inconsistent with the criminal intent required for conviction of the charges (sic) offenses, as defined in the foregoing instructions.

A person who acts, or causes another to act, on a belief or an opinion honestly held is not punishable merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest
(continued...)

ance on the advice of counsel.[3] The court reasoned that Frame's good faith defense was adequately covered in the instructions given, and there was insufficient evidence to support an instruction on reliance on counsel. The court emphasized that Frame would have the opportunity to present both defenses to the jury during closing arguments.

Frame correctly identifies cases in which we found abuse of discretion where a court omitted a good faith instruction despite the inclusion of instructions defining specific intent, "knowingly," and "willfully." *See United States v. Goss*, 650 F.2d 1336, 1344 (5th Cir. 1981); *United States v. Fowler*, 735 F.2d 823, 828-29 (5th Cir. 1984). But, "later caselaw has effectively by-passed [*Goss* and *Fowler*]." *United States v. Hunt*, 794 F.2d 1095, 1098 (5th Cir. 1986).[4] Since *Hunt*, we have held

---

[2](...continued)
error in management does not give rise to the level (sic) of criminal conduct.

A defendant does not act in "good faith" if, even though he or she honestly holds a certain opinion or belief, that defendant also "knowingly" makes false or fraudulent pretenses, representations, or promises to others.

While the term "good faith" has no precise definition, it encompasses, among other things, a belief or opinion honestly held, absence of malice or ill will, and an intention to avoid taking unfair advantage of another.

In determining whether or not the government has proven that a defendant acted with requisite criminal intent or whether the defendant acted in good faith, the jury must consider all of the evidence received in the case bearing on the defendant's state of mind.

The burden of proving good faith does not rest with the defendant because the defendant does not have any obligation to prove anything in this case. It is the government's burden to prove to you, beyond a reasonable doubt, that the defendant acted with the criminal intent required to convict him of the crimes charged.

If the evidence in the case leaves the jury with a reasonable doubt as to whether the defendant acted with the requisite criminal intent or in good faith, the jury must acquit the defendant.

[3] The requested instruction was as follows:

Defendant, before taking any action, while acting in good faith for the purposes of asking for advice of a lawyer, for his or her possible future conduct sought and obtained advice of an attorney whom he considered to be competent
(continued...)

---

[3](...continued)
and made a full and accurate report of disclosure to his attorney of all important material facts which he or she had knowledge of or had means of knowing, then acted strictly in accordance with the advice of that attorney. That advice that the attorney gave following this full report of disclosure, defendant would not be willfully or deliberately doing wrong in performing some act as to those terms, as those terms are used in these instructions.

Whether the defendant acted in good faith for the purpose of truly seeking guidance as to the question about which he was in doubt and whether he made a full and complete reported disclosure to an attorney and whether he or she acted strictly in accordance with the advice received are all questions for you to determine.

[4] In *Hunt* we held that *Goss* and *Fowler* were inconsistent with earlier cases such as *United States v. Wellendorf*, 574 F.2d 1289 (5th Cir. 1978), and that the conflict had to be resolved in
(continued...)

3

that the omission of a good faith jury instruction is not an abuse of discretion if the defendant is able to present his good faith defense to the jury through, *inter alia*, witnesses, closing arguments, and the other jury instructions.[5]

Frame was able to present his good faith defense to the jury. The instructions defining specific intent, "knowingly," and "willingly" make plain that the jury was required to acquit Frame if, because of his good faith, he lacked specific intent. As for reliance on counsel, the court did not abuse its discretion in finding insufficient evidence to warrant the instruction. Frame's counsel conceded, at the jury charge conference, that no evidence had been advanced showing that Frame had discussed this matter with his lawyers; counsel claimed only that "it appears clear that he did rely" on lawyers who reviewed documents for him.

Finally, the court stated that Frame was free to argue both defenses during closing. Indeed, Frame's good faith and his reliance on the ad-

___

[4] (...continued)
favor of the earlier cases. *Hunt*, 794 F.2d at 1098 (citing *United States v. Gray*, 751 F.2d 733, 735-36 (5th Cir.1985)).

[5] *See, e.g.*, *Hunt*, 794 F.2d at 1098; *United States v. Fooladi*, 746 F.2d 1027, 1030 (5th Cir. 1984); *United States v. Gray*, 751 F.2d 733, 736-37 (5th Cir. 1985); *United States v. St. Gelais,* 952 F.2d 90, 93-94 (5th Cir. 1992) ("We find that the court's charge adequately conveyed the concept of good faith to the jury and that, while defense counsel did not mention the words "good faith" in his closing argument, his remarks put the concept of good faith and innocent motive before the jury. Thus, the district court did not commit reversible error . . . ."*); United States v. Peterson*, 101 F.3d 375, 382-83 (5th Cir. 1996); *United States v. Daniels*, 247 F.3d 598 (5th Cir. 2001); *United States v. Gonzales*, 436 F.3d 560, 571 (5th Cir.), *cert. denied*, 126 S. Ct. 2363 (2006).

vice of counsel were central to his attorney's closing arguments.[6] Because the jury instructions "fairly and adequately" addressed Frame's defenses, the decision to deny the re-

___

[6] The following quotations are from the closing argument of Frame's counsel:

SS [In order to convict] you have to believe that whatever those acts were that he committed were done with a certain type of state of mind . . . . If you don't believe that Mr. Frame had the requisite state of mind in order to commit that offense, then you cannot convict him. You must find him not guilty.

SS [O]ther people who were testifying for him told you that they believed that he acted in good faith for the benefit of his corporation.

SS Mr. Frame told you that he thought he acted in good faith for the benefit of the corporation.

SS [Frame] also told you that he relied on his employees, he relied on a staff of CPAs at Ernst & Young that they paid a lot of money to, he relied on his attorney.

SS I know there was no intent on Paul Frame's part to commit a crime. And in order to convict him of any of these charges, you have to believe that there was a specific intent.

SS [In order to convict] you have to believe that he had a specific intent to defraud his company.

SS [Frame] did what he ordinarily does not do. He stepped back and he let two layers, who he thought were good people and who he trusted and who he thought had his best interest at heart, handle a sticky personal situation.

SS Now, if you're going to find him guilty of something, add another little line there: Paul Frame is an idiot for trusting [his lawyers] to take care of this lawsuit for him.

quested instructions was not an abuse of discretion.

## III.

Frame argues that his Sixth Amendment right to an impartial jury was violated because the court refused his request to ask seven voir dire questions concerning the well-publicized Enron trial. "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). "We grant broad discretion to the trial judge in making determinations of impartiality and will not interfere with such decisions absent a clear abuse of discretion." *United States v. Hinojosa*, 958 F.2d 624, 631 (5th Cir. 1992). The mere fact that an excluded question would have been helpful is insufficient to render its exclusion unconstitutionalSSto meet this burden the question's exclusion must "render the defendant's trial fundamentally unfair." *Mu'-Min*, 500 U.S. at 416 (citing *Murphy v. Florida*, 421 U.S. 794, 799 (1975)).

The court admonished the jury that this was not the Enron case. It asked whether any potential juror had a problem giving the presumption of innocence to a corporate defendant; none did.[7] Frame's counsel asked whether any potential juror had a preconceived notion of Frame's guilt; none did. Several potential jurors had knowledge of someone who had been charged with fraud, and each said

---

[7] Frame argues that by not allowing detailed questions concerning the potential jurors' feelings about Enron, the court prevented him from exploring "the venire's feelings toward corporate America." To the contrary, the potential jurors were asked about their feelings toward corporate defendants and affirmed that they were not biased against them.

that he could impartially hear and decide the case. Frame was free to probe further into the potential jurors' feelings about his CEO capacity as long as the questions were relevant to Frame's case.

The only evidence Frame advances concerning the alleged insufficiency of voir dire is the dismissal of a juror who approached the case manager at a recess during the examination of the first witness to say that she could not be impartial. She was questioned outside the presence of the jury and told the court that during voir dire she had thought that she could be impartial, and hence she had represented to the court that she harbored no bias or prejudice, but that she had changed her mind after hearing opening arguments. Although the court suspected that the juror was being insincere and merely attempting to avoid jury duty, it dismissed her from the jury.

Frame fails to articulate how this episode evinces that voir dire rendered the trial fundamentally unfair. During voir dire (after the court had mentioned Enron three times), the juror said she had no bias toward corporate executives or preconceived notions of Frame's guilt. After hearing opening statements, she changed her mind. Frame fails to explain why detailed questions concerning Enron would have caused her change to her mind before opening statements.

Frame was permitted to question potential jurors about their thoughts and feelings toward corporate defendants in general and Frame in particular. The court admonished the jury that this was not the Enron case, and the potential jurors represented that they would reach a verdict based only on the evidence advanced during trial. The omission of Frame's requested questions about Enron, an unrelated case, did not render his trial fundamentally unfair, and

thus the court acted within its discretion.

AFFIRMED.