**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 18, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 06-40271
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN HERNANDEZ-MARTINEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

EDITH H. JONES, Chief Judge:

Appellant Juan Hernandez-Martinez ("Martinez") appeals his revocation sentence, arguing <u>inter</u> <u>alia</u> that the district court improperly based his sentence on the Guideline for illegal reentry to the United States, a crime he committed but was not charged with. Under the applicable plain error standard of review, Martinez cannot establish that the district court used an improper sentencing consideration, and his sentence is AFFIRMED.

## I. BACKGROUND

Hernandez's first appearance before the district court occurred in 1999, when he pled guilty to one count of possession with intent to distribute cocaine, an offense that carried a

statutory penalty of one hundred twenty months. Hernandez's criminal history made him safety-valve eligible, reducing the applicable Guidelines range to seventy to eighty-seven months. Based on his substantial assistance to the Government, however, the court granted a significant downward departure and sentenced Hernandez to only forty-eight months imprisonment, to be followed by five years' supervised release. Among the conditions of supervised release were that: (1) Hernandez was not to commit another federal, state, or local crime; (2) if deported, Hernandez was not to reenter the United States illegally; and (3) if Hernandez returned to the United States, he was to report to the nearest United States Probation Office.

After completing his sentence, Hernandez was released from prison in May 2002, and deported to his home country of Mexico. His homecoming was short-lived. Hernandez returned to the United States illegally approximately a year and a half after his deportation and began working in a mattress factory in Chicago, Illinois. In 2005, he was arrested for shoplifting from a JC Penney store. Hernandez was released on bond, but after he was detained following a traffic stop, the Probation Office was notified of the arrest. Hernandez was not charged in Illinois with either theft or illegal reentry, but the United States Government sought to revoke his supervised release for three separate violations: (1) committing theft; (2) unlawfully reentering the United States; and (3) failing to report to the Probation Office

2

upon reentry. Hernandez was sent from Illinois to Texas for revocation proceedings.

At the revocation hearing, Hernandez appeared before the same judge who had granted him a significant downward departure in his cocaine possession sentence, and he pleaded true to the three violations. The court expressed displeasure that Hernandez had blatantly disregarded the provisions surrounding his supervised release and that the prior sentence had not deterred his criminal activity. The court also expressed frustration with the failure of the U.S. Attorney's office in Chicago to prosecute Hernandez, and others similarly situated, for illegal reentry into the United States, instead sending them to the Southern District of Texas for revocation proceedings. After discussing with counsel Hernandez's violations, the prior downward departure, and the lack of an illegal reentry prosecution, the court inquired what the Guidelines sentence for illegal reentry would have been. The Probation Officer advised the court that Hernandez would have faced forty-six to fifty-seven months imprisonment had he been prosecuted in Illinois for illegal reentry. Concluding that the revocation Guideline of four to ten months did not adequately address this type of violation and that the prior sentence had served as an insufficient deterrent, the court sentenced Hernandez to forty-six months — significantly above the Guidelines range but well below the statutory maximum of five years for revocation.

Hernandez appeals, asserting that he was impermissibly sentenced for his uncharged illegal reentry rather than for his underlying drug offense, and that his sentence is thus unreasonable, plainly unreasonable, and an abuse of discretion.

## II.  DISCUSSION

### A.  Preservation of Error

The Government argues that Hernandez raises his reasonableness objection for the first time on appeal, and we therefore should review only for plain error.  See FED. R. CRIM. P. 52(b); United States v. Olano, 507 U.S. 725, 732-34, 113 S. Ct. 1770, 1776-78 (1993).  Hernandez, however, asserts that he preserved his objection below by requesting a sentence at the low end of the four to ten month Guidelines range.  He contends that this request preserves all claims of sentencing error generally, and that he can now present any argument in support thereof.

Hernandez is incorrect that simply asking the court to sentence him within the Guidelines preserves an argument of specific legal error.  Nowhere before the district court did Hernandez object that the sentence was unreasonable, nor did he alert the court to the legal argument he now presents that the court considered an inappropriate factor and impinged on prosecutorial discretion.[1]  Were a generalized request for a

---

[1]     That Hernandez presents a specific legal error distinguishes this case from those that have held that the defendant need not specifically object that a sentence is "unreasonable" to preserve a reasonableness objection on appeal.  Compare United States v. Lopez-Flores, 444 F.3d 1218, 1221 (10th Cir.

4

sentence within the Guidelines sufficient, a district court would not be given an opportunity to clarify its reasoning or correct any potential errors in its understanding of the law at sentencing, and its efforts to reach a correct judgment could be nullified on appeal.  See United States v. Reyes, 102 F.3d 1361, 1365 (5th Cir. 1996) ("[A] contrary decision . . . would encourage the kind of sandbagging that the plain error rule is, in part, designed to prevent").

Here, the district court expressed frustration both at the failure of the Government to charge illegal reentry and the fact that Hernandez had not taken the opportunity arising from a lenient sentence to stay within the law.  It did not specify which of these was its motivating factor, nor was it asked to do so by Hernandez.  Similarly, as the court was not on notice that its statements were being construed in the manner in which Hernandez now characterizes them, it is unclear whether, by questioning the Government as to its failure to charge reentry, the district court was using that as a basis on which to sentence Hernandez, or simply expressing displeasure at the Government's charging practices.

Had the defense objected at sentencing, the court easily could have clarified or, if necessary, corrected itself.  Cf. id. ("[I]f Reyes had objected to the district court's instructions, the court would certainly have corrected its error").  Because it was

_____

2006) with United States v. Castro-Juarez, 425 F.3d 430, 433-34 (7th Cir. 2005).

5

not on notice of the arguments Hernandez now presents, however, it was not given that opportunity. We therefore review the case only for plain error. See United States v. Dominguez Benitez, 542 U.S. 74, 82, 124 S. Ct. 2333, 2340 (2004) (policy behind plain error standard is "to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error"). To prevail, Hernandez must establish: (1) an error; (2) that is clear and obvious; and (3) that affected his substantial rights. Olano, 507 U.S. at 732-34, 113 S. Ct. at 1776-78. If these conditions are met, this court can exercise its discretion to notice the forfeited error only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 732, 113 S. Ct. at 1776 (internal quotation marks omitted).

## B. Reasonableness

Before United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), revocation sentences were reviewed under the "plainly unreasonable" standard set forth in 18 U.S.C. § 3742(e)(4). See United States v. Moody, 277 F.3d 719, 720 (5th Cir. 2001). In Booker, however, the Supreme Court excised 18 U.S.C. § 3742(e) and instructed appellate courts to review criminal sentences, no longer controlled by the sentencing Guidelines, for reasonableness. See Booker, 543 U.S at 260-61, 125 S. Ct. at 764-66. The parties

6

dispute whether this reasonableness standard of review applies to revocation sentences.

According to Hernandez, the reasonableness standard should apply to any non-Guidelines sentences, whether original or revocation. Thus, we would consider whether the sentence: (1) fails to account for a factor that should have received significant weight; (2) gives significant weight to an irrelevant or improper factor; or (3) represents a clear error of judgment in balancing the sentencing factors. See United States v. Duhon, 440 F.3d 711, 715 (5th Cir. 2006). Four circuits agree with Hernandez and have applied Booker's reasonableness standard to revocation sentences.[2] Courts have also observed that because this test is substantially equivalent to the plainly unreasonable standard, little has changed post-Booker. See Sweeting, 437 F.3d at 1106; Tedford, 405 F.3d at 1161; Cotton, 399 F.3d at 916.

In contrast, the Government advocates adherence to the pre-Booker plainly unreasonable standard. Unlike the Guidelines applicable to original sentences, the Guidelines for revocation sentences have always been advisory. See United States v. Escamilla, 70 F.3d 835, 835 (5th Cir. 1995) (per curiam). Logically, Booker's ripple effects should not extend to the revocation context. The Fourth Circuit persuasively reasons that

_____

[2] See United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006)(per curiam); United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005); United States v. Cotton, 399 F.3d 913, 916 (8th Cir. 2005); United States v. Fleming, 397 F.3d 95, 99 (2d Cir. 2005).

7

§ 3742(a)(4), which authorizes the "plainly unreasonable" standard for revocation sentences, was not invalidated by <u>Booker</u>. <u>United States v. Crudup</u>, 461 F.3d 433, 437 (4th Cir. 2006). While that provision does not create a standard of review, the court noted, it would be "incongruous that a defendant limited to asserting that his revocation sentence is 'plainly unreasonable,' would be allowed to argue that his sentence should be reversed because it is 'unreasonable.'" <u>Id.</u> Additionally, the Guidelines commentary and statutory provisions "suggest that revocation sentences should not be treated exactly the same as original sentences," because the context of sentencing differs in each instance. <u>Id.</u> The goal of a revocation sentence is to punish the defendant for the violation of supervised release, not the underlying offense. <u>Id.</u> (citing United States Sentencing Commission, <u>Guidelines Manual</u>, ch. 7, pt. A, introductory cmt. 3(b)).

There are other indications that the same standard of review should not apply to revocation and original sentences. For example, the Sentencing Commission "chose to promulgate less precise, nonbinding policy statements" for revocation sentences. <u>Id.</u> at 438. Additionally, in § 3583(e), which governs revocation sentences, Congress provided that only some of the factors set forth in § 3553(a), which are to be considered when imposing a sentence, also apply in revocation proceedings. <u>Id.</u> Finally, Congress used both the terms "unreasonable" and "plainly

8

unreasonable" in § 3742(e), suggesting it intended the two terms to be distinct, and "plainly" was not mere surplusage.  Id.

Ultimately, any difference between the two proffered standards of review for a revocation sentence would not affect Hernandez's fate.  The plain error standard of review clearly forecloses appellate relief. Although the district court expressed displeasure at the Government's failure to charge Hernandez with illegal reentry, it is not evident that it based his sentence on that ground; it is equally or more plausible that the court based his sentence on the fact that it gave Hernandez a significant downward departure in his original sentence.  Thus, if there was any error, it is not plain.  Because Hernandez did not object at sentencing and give the court an opportunity to clarify itself, we are unable to conclude that the court based his sentence on an impermissible factor.  Moreover, that the forty-six month sentence is significantly below the statutory five-year maximum on revocation strongly counsels against its being held reversible on plain error review.

## III.  CONCLUSION

For the foregoing reasons, Hernandez's sentence is **AFFIRMED**.