# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 6, 2011

Lyle W. Cayce
Clerk

No. 10-10721

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

KAWAI ARY-BERRY,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:09-CR-85-1

Before JOLLY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Kawai Ary-Berry ("Ary-Berry") appeals her conviction and sentence for one count of making a false statement involving a health care matter and nine counts of health care fraud. Ary-Berry raises three issues on appeal: (1) the sufficiency of the evidence to support the jury's verdict; (2) whether the district court erred in failing to charge the jury on Ary-Berry's good faith defense; and (3) whether the district court erred in using intended loss rather than actual loss

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10721

in calculating Ary-Berry's sentence.  Finding no error meriting reversal, we AFFIRM.

## I. FACTS

On May 21, 2004, Ary-Berry, a licensed massage therapist, enrolled as a physical therapy provider with the Office of Workers Compensation Program ("OWCP"), part of the United States Department of Labor ("DOL"), to receive reimbursement for medical services provided to workers covered by the Federal Employees Compensation Act ("FECA").  She subsequently billed the OWCP for over $2.5 million worth of services from 2004 to 2008.  On December 9, 2009, Ary-Berry was indicted for one count of making a false statement involving a health care matter and nine counts of health care fraud.[1]  After a two-day trial, the jury returned a guilty verdict on all ten counts.

During the sentencing phase of the trial, Ary-Berry argued that the district court should use the amount Ary-Berry received from the OWCP rather than the amount she billed to calculate loss.  The judge rejected this argument and adopted the finding in the Presentence Report ("PSR") that Ary-Berry intended to cause loss of over $2.5 million, the amount she in fact billed to the OWCP.  Consequently, the district court increased Ary-Berry's offense level by eighteen points and sentenced her to concurrent prison terms of sixty months on count one and seventy-eight months on each of counts two through ten.  The district court also sentenced Ary-Berry to three years of supervised release on each count, running concurrently.  Ary-Berry timely appealed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Ary-Berry challenges the sufficiency of the evidence to support the jury's verdict as to all ten counts of conviction.  Because Ary-Berry moved for a judgment of acquittal based on insufficient evidence, "we review the district

---

[1] The indictment charged Ary-Berry with billing over $2.5 million to OWCP and receiving payments in excess of $1 million, but less than $2 million.

No. 10-10721

court's denial of that motion by examining the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and asking whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Montes*, 602 F.3d 381, 388 (5th Cir.), *cert. denied sub nom. Armijo v. United States*, 131 S. Ct. 177 (2010). "'[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bell*, 678 F.2d 547, 549 & n.3 (5th Cir. Unit B 1982) (en banc)). If "the evidence gives equal or nearly equal circumstantial support to a theory of guilt, as well as to a theory of innocence, the conviction must be reversed." *United States v. Ferguson*, 211 F.3d 878, 882-83 (5th Cir. 2000).

A review of the record shows that the government presented more than enough evidence from which a reasonable trier of fact could find beyond a reasonable doubt that Ary-Berry was guilty on all counts. As to count one, making a false statement in connection with a health care matter,[2] the jury heard testimony that Ary-Berry wrote down provider numbers for physical

---

[2] Count one of the indictment was based on the following statute:

(a) Whoever, in any matter involving a health care benefit program, knowingly and willfully—

    (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or

    (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry,

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

(b) As used in this section, the term "health care benefit program" has the meaning given such term in section 24(b) of this title [18 USCS § 24(b)].

18 U.S.C. § 1035.

No. 10-10721

therapy and durable medical equipment rather than the provider number for massage therapy. Because Ary-Berry enrolled as a physical therapist, even though she only had a massage therapy license, she could bill the OWCP for a broader range of services. Thus, her false statements were material. As to counts two through ten of the indictment,[3] the government presented testimony that Ary-Berry submitted bills for more than twenty-four hours of services in one day and continued to submit bills for patients after they stopped seeing her for treatment. The evidence also showed that Ary-Berry filed bills on dates when she could not have provided services. Indeed, Ary-Berry told an investigator that she knew that the information on certain bills was incorrect, but assumed "that if the government didn't owe her the money, that they wouldn't pay her." The government also presented evidence that Ary-Berry possessed explanations of the uniform codes used to bill services and that she had received training on how to submit proper claims for those services. Finally, the jury heard that Ary-Berry's billings to the OWCP increased from approximately $60,000 in 2004 to $625,815.01 in the first half of 2008, even though she only had one patient in

---

[3] Counts two through ten of the indictment listed individual executions of a health care fraud scheme. The statute under which Ary-Berry was charged reads:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>> (1) to defraud any health care benefit program; or
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title [18 USCS § 1365]), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.
> (b) With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

18 U.S.C. § 1347.

2008. Because a rational trier of fact could have found Ary-Berry guilty beyond a reasonable doubt based on the evidence presented at trial, we find no error on this issue.

## B. Good Faith Instruction

Ary-Berry next challenges the district court's refusal to include her proposed jury instruction on a good faith defense. We review such a refusal for abuse of discretion, noting that the "'trial judge is afforded substantial latitude in formulating his instructions.'" *United States v. Daniels*, 247 F.3d 598, 601 (5th Cir. 2001) (quoting *United States v. Rochester*, 898 F.2d 971, 978 (5th Cir. 1990)). Refusal to include an instruction constitutes reversible error only if: (1) the requested instruction is substantively correct; (2) the actual charge given to the jury did not substantially cover the content of the proposed instruction; and (3) the omission of the instruction would seriously impair the defendant's ability to present his defense. *United States v. St. Gelais*, 952 F.2d 90, 93 (5th Cir. 1992).

Ary-Berry relies on *United States v. Goss*, 650 F.2d 1336 (5th Cir. Unit A July 1981), for the proposition that a trial court commits reversible error if it denies a request for a good faith instruction when there is any evidentiary support for that legal defense. *See id.* at 1344. "*Goss*, however, must be read in light of later cases which indicate that the failure to instruct on good faith is not fatal when the jury is given a detailed instruction on specific intent and the defendant has the opportunity to argue good faith to the jury." *United States v. Storm*, 36 F.3d 1289, 1294 (5th Cir. 1994) (citing *Rochester*, 898 F.2d at 978); *see also United States v. Daniel*, 957 F.2d 162, 170 (5th Cir. 1992) (per curiam) ("We have subsequently noted that *Goss* stands merely for the proposition that an instruction on specific intent will not always be sufficient to necessarily exclude a conclusion of good faith."). The jury instructions in this case defined the terms "knowingly," "willfully," and "intent to defraud," and Ary-Berry conceded

that defense counsel was able to argue good faith to the jury during trial. *See, e.g., Storm*, 36 F.3d at 1294-95 (finding no abuse of discretion in the district court's refusal to submit a good faith instruction to the jury, as the instructions defined "knowingly" and "willfully," and the defendant had the opportunity to present his theory as to his intentions); *Daniel*, 957 F.2d at 170 (finding a good faith instruction unnecessary, as the jury was properly instructed on the elements of the offense, and counsel presented testimony concerning good faith and argued it to the jury). We find no abuse of discretion in the district court's refusal to give Ary-Berry's requested instruction.

**C. Loss Calculation**

Ary-Berry contends that the district court erred in using the amount she billed to the OWCP rather than the amount she received from the OWCP in calculating loss for sentencing purposes. We generally review a district court's sentencing decision for abuse of discretion, although we conduct a de novo review of the "district court's interpretation or application of the Sentencing Guidelines." *United States v. Harris*, 597 F.3d 242, 250 (5th Cir. 2010) (quoting *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotation marks and citation omitted)). Factual findings, including the loss amount, are reviewed for clear error. *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007). In making factual findings, the "district court may adopt the findings of the PSR without additional inquiry if those facts have an evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information is materially unreliable." *United States v. Valles*, 484 F.3d 745, 759 (5th Cir. 2007). "The defendant has the burden of showing that the information relied on by the district court in the PSR is materially unreliable." *Id.* at 759-60.

According to the Sentencing Guidelines, the general rule for loss calculations is that a court should use "the greater of actual loss or intended

No. 10-10721

loss." U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. 3(A) (2009). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1 cmt. n.3(A)(i). "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." *Id.* § 2B1.1. cmt. n.3(A)(ii). The district court has "wide latitude" in calculating the loss amount and should make a reasonable estimate based on the available information. *Id.* § 2B1.1 cmt. n.3(C); *Jones*, 475 F.3d at 705 ("The finding must be plausible in light of the record as a whole."). In cases involving intended loss, "our case law requires the government prove by a preponderance of the evidence that the defendant had the subjective intent to cause the loss that is used to calculate his offense level." *United States v. Sanders*, 343 F.3d 511, 527 (5th Cir. 2003) (citations omitted).

We first reject Ary-Berry's argument that Sentencing Guideline Section 2B1.1 cmt.3(F)(v) dictates that a district court must use the amount Ary-Berry received from the OWCP rather than the amount she billed because this case involves services that were fraudulently rendered by a person falsely posing as a licensed professional. The application rule states that: "[i]n a case involving a scheme in which (I) services were fraudulently rendered to the victim by persons falsely posing as licensed professionals; . . . *loss shall include the amount paid* for the property, services or goods transferred, rendered, or misrepresented, *with no credit provided for the value of those items or services*." U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. 3(F)(v) (2009) (emphasis added). The rule states that loss shall *include* the amount paid for services. It does not *limit* the loss to the amount paid, but merely prevents the district court from setting off the value of services provided by a person fraudulently posing as a licensed

professional.[4] *See United States v. McLemore*, 200 F. App'x 342, 344 (5th Cir. 2006) (per curiam) (unpublished) (stating that "[t]here is no setoff for the value of any services actually rendered or products provided" when applying the special rules for certain cases of fraud, and "the determination of the amount of loss for calculations under U.S.S.G. § 2B1.1(b)(1) require the use of the greater of actual loss of [sic] intended loss"); *see also United States v. Hunter*, 618 F.3d 1062, 1065 (9th Cir. 2010) (finding that the application rule supported the conclusion that the calculated loss required no deduction for the value of work the defendant performed when she was falsely acting as a nurse).  Thus, Ary-Berry's argument that this special application rule required the district court to use only the amount the OWCP paid to Ary-Berry is without merit.

With respect to her argument that she did not intend to cause the loss because she thought OWCP would pay her what she was owed, we note that although Ary-Berry objected to the district court's use of intended loss during sentencing, she did not argue her subjective intent to the district court, so we review the district court's decision for plain error.  *See United States v. Hernandez-Martinez*, 485 F.3d 270, 272-73 (5th Cir. 2007) (reviewing a case for plain error because the district court was not on notice of the arguments later presented on appeal, and the district court therefore had no opportunity to correct itself or clarify its ruling).  To prevail, Ary-Berry must show: (1) an error; (2) that is clear and obvious; and (3) that affected her substantial rights.  *Id.* at 273 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).  If these conditions are met, we may exercise our discretion to reverse only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

---

[4] The Sentencing Commission explained that "the seriousness of these offenses and the culpability of these offenders is best reflected by a loss determination that does not credit the value of the unlicensed benefits provided." U.S. Sentencing Guidelines Manual app. C, vol. II, amend. 617, at 179-80 (2003).

*Hernandez-Martinez*, 485 F.3d at 273 (quoting *Olano*, 507 U.S. at 732 (internal quotation marks omitted)).

On appeal, Ary-Berry has not shown that the district court's findings on subjective intent are incorrect. Because Ary-Berry presented no evidence to challenge the reliability of the intended loss figure in the PSR or to show that another figure exists that more accurately represents the loss Ary-Berry subjectively intended to cause, Ary-Berry has not shown plain error.

AFFIRMED.